UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

Present: The Honorable **STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [24]

## I. INTRODUCTION

Plaintiffs Reina Coreas and Pedro Portillo ("Plaintiffs") bring this case against Defendants City of Los Angeles, Sergeant Beale, Officer Sosa, and Does 1–10 (collectively, "Defendants"). Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging their Fourth Amendment rights were violated due to an unreasonable search and seizure. Plaintiffs also bring two California state law claims for trespass and negligence.[1]

Defendants moved for summary judgment on all claims. Dkt. 24. For the following reasons, the Court GRANTS the motion.

## II. BACKGROUND FACTS[2]

Between 11:30 pm to 11:55 pm on February 16, 2016, Sergeant Beale and Officer Sosa received a

---

[1] Plaintiffs' complaint also alleges a *Monell* claim against the city. Defendants represented to the Court, and Plaintiffs did not dispute, that Plaintiffs plan to dismiss this claim with prejudice. Regardless, since this Court finds no underlying violation, there can be no viable *Monell* claim.

[2] This section is derived from the undisputed facts presented in the parties' separate statements of material facts. *See* dkts. 24-7, 28, and 33.

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

radio call by police communications ("Communications") to respond to a domestic abuse situation at 19142 Parthenia St., #2, Northridge, CA 91324. A 15-year-old female had dialed 911 and told Communications that her father, a male Hispanic, was physically assaulting her mother in the bedroom. She further reported that she was trapped in the bathroom and that a 5-year-old male child was in the bedroom with the father and mother. The officers were also informed by Communications that the 5-year-old was crying and that the victim was vomiting due to her injuries.

The female caller advised that her apartment is part of a gated community and that the officers should drive through the main gate and turn right at the first driveway.[3] The officers drove through the main gate at Vanalden Street and proceeded to drive past an alleyway that they did not see. They turned right at the first street, and did not see any street signs indicating the name of the street. The officers believed they were turning right on Parthenia St., but they actually turned right on Bryant St. The officers located an apartment complex numbered "19142" and went inside the complex to locate apartment #2.

Upon arriving, the officers did not see any lights on inside the apartment and did not hear any noise. They knocked on the front door and announced themselves and asked the resident to open the door. There was no response. Sergeant Beale spoke to Communications to confirm the address and also requested they ask the female caller to step outside. Communications told Sergeant Beale that the female caller was locked in the restroom and unable to get to the door. Sergeant Beale informed Communications that the unit appeared to be quiet inside. Communications advised that the female caller was crying and possibly was not being allowed to open the door. Communications also confirmed the caller was at 19142 Parthenia. Sergeant Beale walked back to the front of the apartment complex and confirmed that it was numbered "19142".

Sergeant Beale could not see into the apartment because the front windows were covered. He did not attempt to see if there were other exterior windows to the apartment. However, the officers noticed a window to the right of the front door that was slightly ajar. Sergeant Beale reached his hands through the window in an attempt to open the front door. The window shattered. Sergeant Beale was then able to reach through the window and open the latch to the front door. The officers entered the apartment holding flashlights and with their guns drawn in a "low ready" position, meaning the guns were pointed downward towards the floor. The officers saw two subjects in the hallway, a male Hispanic and a female Hispanic

---

[3] The parties dispute whether the officers were told to turn right at a "driveway" or a "street". The Court finds this dispute immaterial and thus accepts Plaintiffs' version that they were told to turn on a "driveway".

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

(Plaintiffs). Plaintiffs allege that the officers pointed their guns at them and ordered them first to raise their hands and then to lie on the ground.[4]

Officer Sosa told the Plaintiffs in Spanish to sit on a nearby couch, and they did so. Officer Sosa "cleared" the apartment by looking in all the rooms for individuals that may be suspects or victims of the domestic violence call. Officer Sosa looked in a bedroom and bathroom and did not find any other occupants. It is undisputed that the officers only searched the apartment in a manner that would have enabled them to locate individuals, and did not, for example, search any containers for contraband. Office Beale told Communications that they made entry into "19142 Parthenia Street", but then heard one of the Plaintiffs say "Bryant street". The officers realized their mistake, apologized to Plaintiffs, and told Plaintiffs they would return later to explain. The officers left the apartment within three minutes of entering.

After responding to the domestic abuse call, the officers returned to 19142 Bryant Street, #2. to explain their mistake and again apologize. When they returned they saw a young Hispanic male, later identified as Plaintiff Coreas' son, standing in front of the apartment. He demanded a written apology, which the officers agreed to and later provided.

It is undisputed that Sergeant Beale had previously responded to calls at the Park Parthenia complex no more than 10 times in the past 10 years prior to the night in question, a few after sunset hours, and that he was "somewhat familiar" with the layout of the complex. Officer Sosa previously responded to approximately 3 calls at Park Parthenia, does not recall any of them being after sunset, and is not familiar with the layout of the complex. Lastly, it is undisputed that "Domestic violence calls are amongst the most dangerous, volatile and rapidly escalating calls to which police respond, and family members involved are often dangerous, combative, and may harbor the suspect." Dkt. 28, Pl.'s Separate Statement of Genuine Issues and Additional Material Facts, ¶ 51.

### III. LEGAL STANDARD

---

[4] Defendants dispute this to an extent, pointing out the officers testified at deposition that their guns remained at the "low ready" position but that Plaintiff Portillo testified that Sergeant Beale pointed a gun at him. Regardless, as Defendants point out, Plaintiffs do not bring a cause of action for excessive force. Finding this dispute immaterial, the Court will accept Plaintiffs' version of events.

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.    ANALYSIS

Plaintiffs do not allege that the officers engaged in excessive force, nor do they allege that the search of the apartment was unreasonable. Plaintiffs contention is that the initial entry into the apartment was a violation of their Fourth Amendment rights because the officers lacked probable cause and exigent circumstances. Plaintiffs also allege they were unlawfully seized when the officers pointed their guns at them and ordered them to lay on the floor. Defendants move for summary judgment, claiming no constitutional violations occurred because the officers did have probable cause to enter the apartment and exigent circumstances existed to allow them entry without a warrant, and further that the brief detention of Plaintiffs inside the apartment was reasonable. In the alternative, Defendants allege they are protected by qualified immunity. This Court finds that no constitutional violations occurred and that even if a constitutional violation did occur the officers did not act unreasonably or contrary to well-established law, and would therefore be protected by qualified immunity.

#### A.    Entering the Apartment

Police may enter a home without a warrant when they have probable cause to do so and exigent circumstances exist. *United States v. Alaimalo*, 313 F.3d 1188, 1192–93 (9th Cir. 2002). For probable cause to exist there must be "a fair probability or substantial chance of criminal activity." *Id.* at 1193. This is determined by looking at the totality of the circumstances known to the officer at the time. *Id.* Exigent

:
Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

circumstances exist when a reasonable person would believe that entry into the home is "necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.* at 1192–93 (citing *Bailey v. Newland*, 263 F.3d 1022, 1033 (9th Cir. 2001).

Further, the Ninth Circuit has continuously recognized that officers "responding to a perceived emergency may conduct certain searches without a warrant or probable cause." *Ames v. King County, Washington*, 846 F.3d 340, 350 (9th Cir. 2017) (citing *U.S. v. Stafford*, 416 F.3d 1068, 1073–74 (9th Cir. 2005). To determine whether a search is constitutionally permissible without a warrant or probable cause, the Ninth Circuit analyzes whether: "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *Ames*, 846 F.3d at 350 (citing *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008)).

Here, the undisputed evidence shows that Defendants acted reasonably based on the totality of the circumstances in both concluding that there was an immediate need to protect others from harm, and in limiting the scope of their search to meet that need. In determining that there was an immediate need to protect others from harm, the officers were responding to a domestic abuse call wherein one minor was trapped in the bathroom, another minor was in the same room as the ongoing abuse, and the victim was vomiting due to the physical abuse. A reasonable officer with only this information would have probable cause to believe a crime is occurring.[5] In responding to this information, the officers took reasonable steps in concluding that entry into the home was warranted. The officers arrived at the Plaintiffs' apartment and saw the lights were off and that they could not hear sound coming from the apartment. This would likely give a reasonable officer pause—and in fact, Defendants here did pause to confirm they had the correct location. The officers confirmed with Communications the address of "19142 Parthenia" and then rechecked the numbers "19142" on the apartment building to confirm they matched. Still, the officers did

---

[5] Plaintiffs argue that probable cause cannot be based solely on information from a 911 call, but cites cases that are easily distinguishable. In Plaintiffs' cases someone calls the police to report seeing suspicious activity that turns out to be innocuous when the police arrive. *See Frunz v. City of Tacoma*, 468 F.3d 1141, 1144 (9th Cir. 2006) (finding no probable cause to enter a home based on a neighbor's "suggest[ion] that unauthorized people may be in the house"); *United States v. Struckman*, 603 F.3d 731, 736 (Cir. 2010) (finding entry into a home improper when based solely on a neighbor's "suspicion [that a] man was trying to break into her neighbors' house"). Here, the 911 caller was a firsthand witness of ongoing criminal activity and was in danger themselves. The caller did not merely report that she thought a suspicious individual *might* be committing a crime, but instead was reporting the details of an ongoing assault in which three lives were presently in danger.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

not barge in. The officers asked Communications to inform the caller to step outside. However, the caller reaffirmed that she was trapped in a bathroom and could not do so. Unlike in Plaintiffs' cited case, where "there was [] much else the officers could have done to investigate the reported activity," *Struckman*, 603 F.3d at 742 (internal quotation marks and citation omitted), there was not much more Sergeant Beale and Officer Sosa could have done.[6] They believed that they were on Parthenia St., and continued to believe that up until Plaintiffs informed them after the fact that they were on Bryant. In total, the officers reasonably concluded that exigent circumstances required entry into the apartment and, therefore, no Fourth Amendment violation occurred.

     Plaintiffs argue that Defendants did not act reasonably in entering the apartment because, according to Plaintiffs, the *only* basis for probable cause was the information Communications received from the 15-year-old female who reported the domestic abuse. Plaintiffs ask this Court to adopt a rule that unless officers identify specific, articulable facts at the scene of the incident that corroborate a caller's story, there simply cannot be probable cause to enter a home. However, the Court cannot adopt a bright-line rule for Fourth Amendment analysis. *Snipe*, 515 F.3d at 953 ("In determining whether such an entry is objectively reasonable, the Supreme Court has consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry, and looked to the totality of the circumstances.") (internal quotations marks and citation omitted). In this case, the fact that the home was dark and that the officers did not hear noise does not invalidate the reasonableness of their actions. It is reasonable to believe that a culprit of domestic violence would try to avoid a confrontation with the police and could turn off the lights and silence the other inhabitants. Further, the Communications team told the police that the 15-year-old caller was trapped in the restroom, which reasonably explained why she could not come to the door. Though certainly the police officers could have considered the fact that they did not hear crying, yelling, or vomiting, they could have reasonably believed these events had momentarily ceased or that the sound did not carry from the bedroom to the front door. Regardless, even if the Court presumes the absence of these sounds undermined probable cause, the officers' mistake would not be so unreasonable as to also undermine their qualified immunity, discussed more below.

---

[6] Plaintiffs argue that Defendants could have continued to scope the exterior of the apartment for other windows to see inside. They also argue Defendants could have walked to the opposite street corner 200 feet away, Bryant and Beckford, and looked for the street sign on that corner which would have informed them they were on Bryant St. However, the inquiry is not whether Plaintiffs can hypothesize any possible set of facts that the officers *could* have done. Instead, the inquiry is whether the officers acted *reasonably* (not perfectly) based on the totality of the circumstances.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

Thus, this Court GRANTS summary judgment in favor of Defendants on this issue.

### B. Seizure of Plaintiffs

Upon entering the apartment, the officers had their guns drawn and approached the Plaintiffs in the hallway. The officers briefly pointed their guns at Plaintiffs, told them to put their hands up, and ordered them to lay on the ground. They were then told to sit on the couch. Officer Sosa quickly checked the rooms and found no other occupants. The Plaintiffs overheard Sergeant Beale stating they made entry in "19142 Parthenia", informed the officers that they were actually on Bryant St., and the officers apologized and left. All this occurred within three minutes.

Officers are constitutionally permitted to temporarily detain a person if the officer has reasonable suspicion that criminal activity is occurring. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Officers are allowed to detain individuals within a home while executing a search. *See Los Angeles County v. Rettele*, 550 U.S. 609, 613 (2007).

Plaintiffs do not put forth any argument in their Opposition papers that their detention was unreasonable. And indeed, this Court finds that it was not. The officers thought they were entering an apartment in which violent domestic abuse was occurring and acted reasonably in detaining the residents—whom could have been suspects or victims—quickly executing a search, and promptly leaving once being informed of their mistake. Thus, this Court GRANTS summary judgment in favor of Defendants on this issue.

### C. Qualified Immunity

Even if this Court were to determine that an unreasonable search and seizure took place, it would nonetheless find that the officers are protected by qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed

:

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (KENNEDY, J., dissenting)). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*per curiam*) (citations omitted).

Defendants entered Parthenia Park through the main gate. Defendants drove past an alleyway—after sunset and without a street sign—that they did not see. They did not know that the alleyway would have led them to 19142 Parthenia. They turned down the first street they saw. They thought this street—also without a street sign—was in fact Parthenia, even though it was Bryant. They then found an apartment complex with the five-digit address they were looking for: 19142. They located apartment #2. They knocked and announced themselves and received no response. They confirmed the address with Communications and again walked back to the front of the apartment building to confirm the address as "19142". Thus, when they entered Plaintiffs' apartment they believed they were entering 19142 Parthenia. This was indeed a mistake of fact, but these are not the actions of "plainly incompetent" officers or the actions of officers "knowingly vioat[ing] the law". *See Hunter*, 502 U.S. at 229. This is the exact sort of reasonable mistake that qualified immunity is meant to protect.

There is no clearly established right that an officer must check all nearby street corners for a street sign before entering one's apartment. There is no clearly established right that an officer must walk 360 degrees around one's apartment to peer inside each window before entering. There is no clearly established right that an officer responding to a domestic abuse call must wait to hear the sounds of screams, crying, or vomiting before entering the residence if the totality of the circumstances otherwise justifies their entrance. Thus, this Court GRANTS judgment in favor of Sergeant Beale and Officer Sosa on the issue of qualified immunity.[7]

**D. State Law Claims**

---

[7] The Court further notes that Plaintiffs put forth no argument on qualified immunity other than to say "[i]t is clearly established Federal law that the warrantless search of a dwelling must be supported by probable cause and the existence of exigent circumstances[.] . . . [T]he defendants did not have probably [sic] cause or exigent circumstances to justify their warrantless entry into plaintiffs' apartment. Therefore, they are not entitled to qualified immunity." Dkt. 27, Pl. Opp., p. 13. However, "clearly established law" must be analyzed "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 (2001)). Plaintiffs make no attempt to frame their argument in light of the specific facts in this case.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07000-SVW-PJW | Date | April 20, 2017 |
|---|---|---|---|
| Title | *Reina Coreas, et al v. City of Los Angeles, et al.* | | |

Plaintiffs' trespass and negligence claims hinge on the same set of facts as their constitutional claims. Thus, they fail for the same reasons. Further, Plaintiffs make no attempt to rebut Defendants' contention that their negligence claim is barred by Government Code section 821.6, which states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." *See also Johnson v. City of Pacifica*, 4 Cal. App. 3d 82, 84 (Ca. Ct. App. 1970) (holding that § 821.6 applies to police officers). Thus, this Court GRANTS summary judgment in favor of Defendants on these issues.

### E. Conclusion

The Court GRANTS Defendants motion for summary judgment in its entirety. The prevailing party shall submit a proposed judgment consistent with this order.

Initials of Preparer   PMC